UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SECURED SYSTEMS TECHNOLOGY, INC.,

                              Plaintiff                    **DECISION AND ORDER**

-vs-
                                          08-CV-6256

FRANK LILL & SON, INC.,

                              Defendant

_____

FRANK LILL & SON, INC.,

                              Third-Party Plaintiff

-vs-

SHARED SYSTEMS TECHNOLOGY, INC.

                              Third-Party Defendant.

_____

APPEARANCES

| | |
|---|---|
| For Plaintiffs: | Keith R. Hemming, Esq.<br>Daniel Font, Esq.<br>McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>88 Pine Street, 24th Floor<br>New York, New York 10005 |
| For Defendant: | Martha A. Connolly, Esq.<br>Timothy D. Boldt, Esq.<br>Ernstrom & Dreste, LLP<br>180 Canal View Boulevard, Suite 600<br>Rochester, New York 14623 |
| For Counterclaim-<br>Defendant: | Louis A. Modugno, Esq.<br>McElroy, Deutsch, Mulvaney &<br>Carpenter, LLP<br>Wall Street Plaza<br>88 Pine Street, 24th Floor<br>New York, New York 10005 |

INTRODUCTION

This action involves a dispute arising from a construction contract. Now before the Court is Defendant's motion (Docket No. [#95]) to preclude the testimony of Plaintiff's and Counterclaim-Defendant's expert witness, R. Michael Loewke. The application is granted.

BACKGROUND

The reader is presumed to be familiar with the Court's prior Decisions and Orders in this action. *See*, Docket Nos. [#73, 85, 114]. This action arises from disputes over construction work that was performed at the Bridgeport Harbor Station in Connecticut. Stone & Webster Construction, Inc. ("Stone & Webster") was the prime contractor, and Defendant, Frank Lill & Son, Inc. ("Lill"), was a subcontractor. On or about January 9, 2007, Plaintiff Secured Systems Technology, Inc. ("Secured") and Lill entered a subcontract, pursuant to which Secured agreed to install insulation at the project, in exchange for $3,101,725.00.

Secured maintains that it performed the work required by the subcontract, as well as additional work that Lill requested, but Lill refused to pay for the work. Additionally, Secured contends that Lill interfered with its work in various ways. Specifically, Secured alleges that Lill refused to provide necessary work space and electrical power, issued change orders and then refused to make accommodations for Secured to perform the work, refused to make timely approvals of materials, and forced Secured to install insulation on duct work that was already erected and

elevated, rather than on the ground as per the subcontract and common industry practice. Secured further maintains that Lill intentionally withheld payments in order to harm Secured. In the Amended Complaint, Secured asserts claims for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, fraud, and violation of Connecticut General Statute § 42-158j (providing for timely payment of contractors, subcontractors and suppliers).

Lill denies those allegations, and contends that Secured abandoned the project before completing its work, performed some work improperly and failed to pay its subcontractors and suppliers. Lill also maintains that Secured failed to comply with the subcontract's claims procedures and dispute resolution procedures. Lill asserts counterclaims against Secured, and against Counterclaim-Defendant Shared Systems Technology, Inc. ("Shared"), which Lill maintains is Secured's alter ego.

Shared has asserted its own counterclaims against Lill, asserting the same claims raised by Secured, namely: Breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, fraud and violation of Connecticut General Statute § 42-158j. In addition, Shared asserts counterclaims for "intentional interference with contract," "intentional interference with prospective economic and contractual advantage" and "third party beneficiary" breach of contract.

During pretrial discovery, Secured and Lill obtained reports from their respective expert witnesses. Secured's expert is Edward Mislavsky ("Mislavsky"), who prepared a report dated July 14, 2009. (*See*, Mislavsky Report [#99-8]). Based on his detailed review of the record, Mislavsky offers a number of opinions, including the following:

3

1) Lill did not properly manage the project work schedule, which caused Secured to incur damages for lost productivity and unabsorbed overhead; 2) Lill obstructed Secured's ability to perform its work, by failing to release ductwork to be insulated, installing ductwork prior to it being insulated and failing to provide Secured with an appropriate power source and work area; 3) Lill owes Secured approximately $5 million in damages.

Lill's expert is Christopher Beirise ("Beirise") of the Kenrich Group, LLC. In rebuttal to Mislavsky's report, Beirise offers opinions including the following: 1) it was not Lill's responsibility to create a project schedule; 2) many of the delays with the project were caused by parties other than Lill, including Secured; 3) Mislavsky has not shown that Secured sustained damages for lost productivity and unabsorbed overhead; 4) Lill paid Secured's invoices; 5) Lill incurred damages as a result of Secured actions, in the amount of $842,395.40; and 6) Mislavsky's calculations of Secured's damages are incorrect, and overstate Secured's damages by approximately $1.7 million.

Shared also obtained a report from its expert, R. Michael Loewke ("Loewke"). *See*, Docket Nos. [#95-4, #95-5]. Loewke indicates that his report is based on his review of the record and the reports by Mislavsky and Beirise. Loewke's report states that it will "provide a different focus on the legitimacy of the theories and opinions expressed" by Mislavsky. More specifically, Loewke states that he has reviewed Beirise's "'methods' of calculating damages and costs," and that Mislavsky's opinion is flawed and "disingenuous at best." *See*, [#95-5] at pp. 5-6, 3. Loewke offers opinions including the following: 1) the delays on the job were beyond the control of

4

Lill and Secured; 2) both Lill and Secured suffered severe losses in productivity due to the delays; 3) Lill initially attempted to obtain payments from Stone & Webster to compensate Secured for the delays, but later discontinued those efforts; 4) Lill received payment from Stone & Webster, but withheld payment from Secured; 5) Lill directed Secured to perform additional work, but did not prepare the proper change orders; 6) Lill failed to provide Secured with a proper work area and equipment; 7) Secured completed its scope of work under the contract; 8) Beirise did not properly calculate Lill's alleged damages; 9) Beirise incorrectly asserts that Secured never presented a claim for delay costs; and 10) Secured is entitled to $4.8 million in damages, exclusive of interest and consequential damages.

Following the completion of discovery, Secured and Lill each filed motions for partial summary judgment. Lill also subsequently filed the subject motion to preclude Loewke's expert testimony, on the grounds that it "attempt[s] to usurp the role of the jury in this matter, [and] also will not assist the trier of fact and is inherently unreliable." Connolly Decl. [#95-1] at ¶ 1.

ANALYSIS

*Lill's Daubert Motion*

Defendant maintains that Loewke's testimony should be precluded. The applicable legal principles are clear:

> The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding that the *Frye* test of general acceptance in the scientific community was superceded by the Federal Rules); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (observing departure, under Federal Rule, from the Frye standard).

The shift under the Federal Rules to a more permissive approach to expert testimony, however, did not represent an abdication of the screening function traditionally played by trial judges. To the contrary, as *Daubert* explained, Rule 702 governs the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court clarified that, whether a witness's area of expertise was technical, scientific, or more generally "experience-based," Rule 702 required the district court to fulfill the "gatekeeping" function of "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Daubert* enumerated a list of factors that, while not constituting a "definitive checklist or test," a district court might consider in evaluating whether a proffered expert opinion has the required indicia of scientific reliability: whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific

6

standards existed to govern the theory or technique's application or operation. *See Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. In addition to setting forth these criteria for testing an expert's methodology, the Supreme Court has also stated that reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit*[1] of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) [("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")].[2] Thus, we have previously stated that "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266.[3]

Even after determining that a witness is "qualified as an expert" to testify as to a particular matter, Fed.R.Evid. 702, and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will "assist the trier of fact." We have consistently held, in that respect, that expert testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991), by definition does not "aid the jury in making a decision"; rather, it "undertakes to tell the jury what result to reach," and thus "attempts to

---

[1] "Ipse Dixit: [Latin "he himself said it"] . . . Something asserted but not proved <his testimony that she was a liar was nothing more than an ipse dixit>." Black's Law Dictionary (9th ed. 2009).

[2] *See, General Elec. Co. v. Joiner*, 118 S.Ct. at 519 ("[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the [FRE] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered.").

[3] *See also, Amorgianos*, 303 F.3d at 267 ("The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.") (citation omitted).

substitute the expert's judgment for the jury's," *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994).

> In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. Indeed, the Supreme Court, echoed by members of our own court, has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations. *See, e.g., Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 (" 'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.' " (*quoting* Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991))); *United States v. Young*, 745 F.2d 733, 766 (2d Cir.1984) (Newman, J., concurring) (noting that "the very breadth of the discretion accorded trial judges in admitting [the expert opinion of a detective testifying as to the criminal nature of a defendant's activities] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny. A trial judge should not routinely admit opinions of the sort at issue here and should weigh carefully the risk of prejudice.").

*Nimely v. City of New York*, 414 F.3d 381, 395-397 (2d Cir. 2005) (footnote omitted). "The inquiry is a flexible one, and district courts enjoy considerable discretion in deciding on the admissibility of expert testimony." *U.S. v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011) (citations and internal quotation marks omitted).

Lill maintains that Loewke's opinions in this action should be excluded, since they are not reliable and will not assist the trier of fact. In that regard, Lill contends that Loewke's reports "do nothing more than offer 'an opinion of an opinion.'" Lill Memo [#95-8] at p. 1. Lill further states that Loewke's opinions are "unreliable

8

because [he] fails to use any identifiable principles or methods to arrive at his opinion on damages." *Id*. at 9. The Court agrees.

Mr. Loewke indicated that he has little formal education in calculating or analyzing damages, and that his knowledge was attained from having worked in the plumbing and construction trade. Loewke's deposition testimony, though, was vague insofar as it pertained to connecting such work experience to the issues in this case. *See, e.g.*, Loewke Dep. at 100. Loewke's expert reports were similarly vague and his analysis in most respects was cursory and unsupported.

Loewke's deposition testimony shed further doubt on the reliability of his reports. In that regard, Loewke was unaware of many pertinent details concerning the subject project. In fact, Loewke stated that he was not sure what work Secured actually performed for Lill on the project. *Id*. at 94-95. Loewke further stated that he did not know whether the payment applications that Secured submitted to Lill were accurate. *Id*. at 162.

Loewke attributed this lack of knowledge to the fact that his "focus" in preparing his expert reports was not on the construction project itself, but on reviewing the reports prepared by the other two experts. Loewke Dep. at 61; *see also, id*. at 90 (Indicating that his engagement by Shared's attorneys was "limited to a review of the reports" by Lill's and Secured's experts); 105 ("The scope of [my] work was to take a look at both the expert reports and see if I can come up with an understanding of what both of them said and the issue related to both."); 103; 154 ("We took his [Beirise's] calculations at face value. We didn't argue with his

calculations. I was only asked to compare the reports."). In other words, Loewke relied on the facts set forth in the other experts' reports, without independently verifying them. *Id*. at 11-112, 115.

Loewke states that he was hired merely to review the other experts' reports and then "put them in simple English," without critiquing them or deciding which expert had the more correct position. *Id*. at 105-107. In fact, though, Loewke did purport to decide which expert's views were correct. Specifically, Loewke's reports expressly indicate that Secured's expert is more credible. *See*, Loewke Supp. Report at p. 3 ("[O]ur findings are that the report from Secured has validity . . . while the report from Lill contains a flawed view of the impacts to Lill on the project, as well as several mathematical errors in the damage calculations."). As to one disputed point in the competing reports, Loewke accepted Secured's argument and rejected Lill's argument, even though it was "absolutely unclear" to him who was right. *Id*. at 198. Furthermore, Loewke described Beirise's opinions as alternately "disingenuous," "completely false and misleading" and being in "bad faith." See, Lill's Motion [#95], Ex. D.

However, Loewke's opinions as to the credibility of the other expert witnesses are not admissible. *See, Highland Capital Mgt., L.P. v. Schneider*, 551 F.Supp.2d 173, 180 (S.D.N.Y. 2008) ("Duval's opinion as to the credibility of witnesses is inadmissible. Duval may not testify regarding the credibility of . . . other witnesses. Such subjective review of the evidence is improper, and Duval does not have personal knowledge of the underlying facts.") (citations and internal quotation marks omitted);

*Deutsch v. Novartis Pharmaceuticals Corp.*, 768 F.Supp.2d 420, 481 (E.D.N.Y. 2011) ("" In general, expert opinions which assess or critique another expert's substantive testimony are relevant, but opinions which attack an expert's credibility ( e.g., testimony than an expert is lying) are not.") (citation omitted).

It further appears that Loewke's opinions as to damages are not based on any reliable methodology. To the extent that Loewke purportedly performed his own calculations of damages, he merely compared Mislavsky's and Beirise's reports and chose the result that made more sense to him, that is, the result that he found to be more credible, without having actually performed the calculations necessary to determine whether either one's conclusions were correct.

Loewke's reports are also affected by other errors that make his opinions unreliable. For example, Loewke agreed at deposition that he had used the wrong dates when calculating delay damages in his reports, but stated that he did not intend to amend his reports unless specifically asked to do so. *Id*. at 185. Loewke also mistakenly described several clearly disputed key issues as being "undisputed," which renders his analysis on those points unreliable. *Id*. at 203-204.

For all of these reasons, the Court finds that Loewke's opinions in this action are neither reliable nor well-supported, and are therefore inadmissible pursuant to FRE 702. Additionally, the Court finds that such evidence should be excluded under Rule 403, since its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

CONCLUSION

For the foregoing reasons, Lill's motion (Docket No. [#95]) to preclude the testimony of Plaintiff's and Counterclaim-Defendant's expert witness, R. Michael Loewke, is granted.

So Ordered.

Dated:  Rochester, New York
        December 19, 2012

                            ENTER:


                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge